UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PACTIV CORPORATION,
a Delaware corporation,

      Plaintiff,

                                  Civil No. 05-71116
                                  Hon. John Feikens

      v.

STEVEN E. CHESTER, Director of the
Michigan Department of Environmental
Quality, and MICHAEL COX, Attorney
General for the State of Michigan,

      Defendants.
_____/

**OPINION AND ORDER DENYING THE
MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II AND III**

      Previously, I found I have jurisdiction to hear Plaintiff's claims that M.C.L. §§ 324.20114(1)(h) and 324.20137(1) violate its constitutional due process rights, to the extent that the statutes require Pactiv Corp. (Pactiv) to undertake planning and penalize the failure to properly plan without first providing notice and an opportunity to be heard.[1] Pactiv Corp. v. Chester, 419 F.Supp.2d 956 (E.D. Mich. 2006). I also declined to take jurisdiction over the state law claim. Id. I now turn to the merits of the remainder of the motion.

**FACTUAL BACKGROUND**

      I previously stated the factual background for this matter in my Opinion and Order of January 30, 2006, and I will not repeat it here. 419 F. Supp.2d at 960-63.

---

[1]In response to my Order regarding further briefing on ripeness, Defendants confirm their position that PACTIV is not in compliance with these provisions, because the plans submitted by Plaintiff do not satisfy M.C.L. § 324.20114(1)(h). (Def.'s Resp. to the May 2, 2006 Order.)

**ANALYSIS**

**I. Standard for Dismissal of the Claims**

The general rule is that "some discovery must be afforded the non-movant before summary judgment in granted." White's Landing Fisheries, Inc. v. Buchholzer, 29 F.3d 229, 231 (6th Cir. 1994). Discovery has not yet begun in this matter. Therefore, although Defendants' motion is for summary judgment, I will apply the standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6) to the remainder of Defendants' motion. A motion to dismiss may be granted under Fed. R. Civ. P. 12(b)(6), "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In reviewing the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001).

**II.  Statute of Limitations**

In the second hearing on this matter, I asked both parties to submit briefing on the statute of limitations applicable to actions brought for violation of M.C.L. § 324.20114(1)(h), which is part of Michigan's Natural Resources and Environmental Protection Act (hereinafter the Act). (Tr. of Apr. 13, 2006 at 24–27.)   I had a responsibility to raise this issue, because it goes toward the justiciability of this action and thus this court's jurisdiction. Kontrick v. Ryan, 540 U.S. 443, 456 (2004) (citing Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884) (court must consider subject matter jurisdiction even if parties fail to raise it)).  If it is too late for the

2

government to bring an action against Plaintiff, then Plaintiff's claims potentially would be moot, as there would be no lawful means for Defendants to seek any penalty from Plaintiff for the failure to plan in accordance with the request under M.C.L. § 324.20114(1)(h).

Defendants assert the applicable statute of limitations requires that actions be filed "within [three] years after discovery of the violation for which the civil fines are assessed." M.C.L. § 324.20140(1)(c). Defendants aver that they could not have discovered Plaintiff's noncompliance with the planning requirements before July 28, 2004, and thus the limitations period will not expire until July 28, 2007. (Defs.' Br. of Apr. 28, 2006, 3.) Defendants also assert that the violations are continuing daily, and thus liability is growing daily, but that the law's structure only allows the government to recover at most three years worth of daily fines. Id. at 7. Plaintiff concedes no point of fact or law relating to the statute of limitations, but notes that Defendants' position means that its potential liability is still increasing daily. (Pl.'s Br. of May 8, 2006, 2.)

Defendants make a plausible argument that this case is not moot, but that argument relies on both factual and legal suppositions. As stated above, there has not been discovery on these points, and thus even if Plaintiff wished to assert mootness of this action due to the period having run, it likely would not be able to carry its "heavy burden" of demonstrating such mootness without a chance to conduct discovery and determine the applicable facts. Cleveland Branch, N.A.A.C.P. v. City of Parma, 263 F.3d 513, 531 (6th Cir. 2001) (citing County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). Under this reasoning, I find that mootness has not been sufficiently demonstrated at this time, and therefore this claim is still legally justiciable. I note to the parties that this Court may have to return to this issue at the close of discovery, and urge

them to take that into consideration as this case progresses.

### III.  Federal Question Jurisdiction and the Declaratory Judgment Act

A federal court lacks jurisdiction to hear a claim under the Declaratory Judgment Act when a complaint essentially asserts a defense to an impending state court action brought under state law, because federal question jurisdiction does not exist if the only federal question is a defense.  Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 248 (1952).  Plaintiff asserts that jurisdiction exists in this case, however, because 42 U.S.C. § 1983 provides a federal statutory remedy independent of the Declaratory Judgment Act.  Plaintiff argues it is thus bringing suit to remedy the breach of a federal right, not simply to assert a defense to an impending state court action.  (Pl.'s Br. of April 27, 2006.)  I agree, and therefore find I have jurisdiction to decide the due process claims.  I have jurisdiction to hear both the "as applied" and a "pattern and practice" due process challenges, seeking similar relief, brought under two federal statutes: the Declaratory Judgment Act and 42 U.S.C. § 1983.  (Pl.'s Br. of Feb. 13, 2006, 1.)

### IV.  Standard for Due Process Challenges

There is a two-step analysis for procedural due process issues: first, determine whether a protected interest exists, and second, determine what procedures are required to protect that interest.  Morrison v. Warren, 375 F.3d 468, 474 (6th Cir. 2004) (citing Johnston-Taylor v. Gannon, 907 F.2d 1577, 1581 (6th Cir. 1990)); see also Board of Regents v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property").

There is no "all-embracing test for deciding due process claims."  Dusenbery v. United States, 534 U.S. 161, 168 (2002).  The Supreme Court has used several tests to analyze due

4

process claims.  In Mathews v. Eldridge, the Court used balancing test of three factors to

determine what process was due: (1) the nature of the private interest affected by the official

action; (2) the risk of erroneous deprivation of such an interest through the procedures used and

the probable value of additional or substitute procedural safeguards; and (3) the government's

interest, including the "function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).

Plaintiff raises the possibility of an altogether different test of constitutionality articulated in a

series of cases beginning with Ex parte Young, 209 U.S. 123 (1908).  In Ex parte Young, the

Court set forth yet another standard that potentially bears on the question of when parties must

be permitted certain process:

> A law which [imposes] conditions upon the right appeal for
> judicial relief as works in abandonment of the right rather
> than face the conditions upon which it is offered or may be
> obtained, is also unconstitutional.  It may therefore be said
> that when the penalties for disobedience are by fines so
> enormous [...] as to intimidate the company and its officers
> from resorting to the courts to test the validity of the
> legislation, the result is the same as if the law in terms
> prohibited the company from seeking judicial construction
> of laws which deeply affect its rights.

Id. at 147.

I will address first what type of interest is at issue here, and then analyze what process is

needed under the Mathews v. Eldridge test.  Finally, I will turn to the other test of

constitutionality described in Ex parte Young.

**V.  Type of Interest Protected by Due Process**

Plaintiff was not afforded notice or a chance to object formally to the issuance of the

demand letters before the agency took the final action of issuing the letters under M.C.L. §

324.20114(1)(h).  However, that is not a violation of due process if the issuance of the demand under that statute does not implicate interests protected by the Fourteenth Amendment.  Roth, 408 U.S. at 569.  I turn now to the analysis of that question.

## A. Binding Precedent

In Hodel v. Va. Surface Mining & Reclamation Ass'n,, the Supreme Court held that an order requiring a mine operator to cease operations did implicate due process concerns, because the order fell into the emergency situation "exception to the normal rule that due process requires a hearing prior to deprivation of a property right."  452 U.S. 264, 299-300 (1981).  The Court noted that the order, which it characterized as a "summary administrative action," created the question of whether there was an exception to this normal rule.  Id. at 300.  Logically, therefore, The Court ruled that this was the type of interest normally protected by due process, or no exception to the rule would have been necessary.[2]

The Sixth Circuit has issued decisions on pre-enforcement review and the kind of property interests that require due process protections in three cases.[3]  In Barmet Aluminum

---

[2]The Court in Hodel also ruled that the plaintiffs did not have standing to bring a due process challenge to the monetary penalty provisions because they failed to allege that any one of them had received notice that such penalties were being assessed against them.  452 U.S. at 304.  I note that I found standing in this case, in part because Plaintiff had received notice that created a well-founded fear that such penalties would be assessed against them.  429 F.Supp.2d at 963.

[3]In addition to these cases, the Sixth Circuit considered another case with an extremely similar factual situation in which it spent two sentences on due process concerns.  J.V. Peters & Co. v. Adm'r, Envtl. Prot. Agency, 767 F.2d 263, 266 (6th Cir. 1985) ("Plaintiffs also argue that the requirements of due process compel a judicial determination of propriety prior to a response action. They can suffer no deprivation until the adjudication of the section 107 litigation, however, and they will have full opportunity to argue liability at that time").  Since the other two precedents offer far more analysis on the question of the nature of the interest and its deprivation, I do not examine this case further.

6

Corp. v. Reilly, the Environmental Protection Agency (EPA) sent a letter to the plaintiff, inviting

but not requiring it to conduct a remedial investigation.  927 F.2d 289, 290 (6th Cir. 1991).  The

Sixth Circuit reasoned that because the plaintiff was only being offered an opportunity to reduce

its liability, and not being required to conduct the investigation, there was no need for pre-

enforcement review of the EPA's letter.  Id.  ("Thus far, Barmet has not been 'forced' to do

anything.  Specifically, it is not required to conduct an [investigation].")

The Barmet decision does contain further guidance on the matter, however, by its

reliance on three other decisions regarding pre-enforcement review.  927 F.2d at 295-96.  First, it

discussed Reardon v. United States, 922 F.2d 28 (1st Cir. 1990), in which the court found that

pre-enforcement review was required before the state could impose a lien on property under 42

U.S.C. § 9607(l)(1).  Barmet, id. at 295.  In Reardon, the EPA had taken cleanup actions at a

polluted site, and then imposed a lien on the plaintiff's property to cover the agency's costs.

Barmet, id. at 295, citing Reardon, 922 F.2d 28.  Reasoning that the placing of a lien on property

"clearly affects a legal right and is in more urgent need of prompt judicial review" than the

decision by the agency as to what cleanup the government would undertake, the First Circuit

required pre-enforcement review.  Barmet, id., quoting 922 F.2d at 32.

The second decision Barmet relied on is South Macomb Disposal Auth. v. Envtl. Prot.

Agency, 681 F. Supp. 1244 (E.D. Mich. 1988) (Pratt, J.).  In South Macomb, as in Reardon, the

EPA had not ordered the plaintiff to do anything, but had undertaken cleanup efforts itself,

expecting to recover its costs through a later court proceeding.  681 F.Supp. 1244.  Judge Pratt

found that because the plaintiff would have a chance to argue that it had no liability at all in the

7

court action the EPA would eventually bring to recover the costs, the EPA did not have to give the plaintiff a chance to dispute liability before the agency performed its own cleanup. <u>South Macomb</u>, <u>id.</u>, at 1251. The Sixth Circuit quoted approvingly from a portion of the decision noting that due process did not require that the timing of the hearing be changed. 927 F.2d. at 295.

The third decision discussed in the <u>Barmet</u> opinion is <u>Schalk v. Reilly</u>, 900 F.2d 1091 (7th Cir. 1990). Like the other two decisions relied on by the Sixth Circuit, it involved a plaintiff seeking a hearing as to liability before the agency conducted its own cleanup. <u>Barmet</u>, 927 F.2d at 297, citing <u>Schalk</u>, 900 F.2d at 1098. The Seventh Circuit found "no recognized constitutional rights" were implicated by the failure to hold a hearing at an earlier stage in the process. <u>Schalk</u>, 900 F.2d at 1098.

Since <u>Barmet</u>, the Sixth Circuit has issued one other decision that discussed pre-enforcement review, <u>United States v. Gurley</u>. 384 F.3d 316 (2004). In <u>Gurley</u>, the EPA ordered Gurley to respond to some information requests in 15 days, and he was warned that failure to do so could result in enforcement action by the EPA and civil penalties of up to $25,000 per day for noncompliance. <u>Id.</u> at 318. The statutory provision regarding enforcement of these information requests provided for both injunctive relief and monetary civil penalties, noting that "the court may assess a civil penalty not to exceed $25,000 for each day of noncompliance against any person who unreasonably fails to comply with this provision." <u>Id.</u> at 321, quoting 42 U.S.C. § 9604(e)(5)(B).[4] The Sixth Circuit held that because there would be a judicial determination that

---

[4]The penalty provision at issue here allows the state to sue and seek "a civil fine of not more than $1,000.00 for each day of noncompliance without sufficient cause with a written request of the department pursuant to § 20114(1)(h). A fine imposed under this subdivision shall

federal law had been violated following a "full and fair hearing" before any penalty would be imposed, there was no constitutional requirement for a pre-enforcement hearing.  Id. at 326.

Finally, in dicta, the Sixth Circuit found that the issuance of a letter stating that penalties were effective immediately did not deprive the recipient of property, because the recipient did not pay the fine, and appealed the decision so it would not be subject to any penalty.  Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 442 F.3d 410, 434 n. 18 (6th Cir. 2006).  The Sixth Circuit did not analyze Hodel in its opinion.

None of these binding precedents precisely addresses the question before me.  Unlike the situation in Hodel, the Plaintiff has been ordered to plan, not to stop its entire business operation, but it has received notice of its liability for civil penalties, and the liability is growing by the day. Unlike the situation in Barmet and the cases on which it relied, the agency has ordered Plaintiff to do something, and the amount of fines to which it may be subject is controlled by the agency, because Plaintiff is not statutorily entitled to any hearing until the government decides to sue it. Unlike the situation in Gurley, where the statute required the government to prove that the noncompliance was unreasonable, in this case Pactiv has the burden of asserting sufficient cause or good faith as a defense in any court hearing.  See 419 F.Supp.2d at 966 n.7.  Finally, unlike in Brentwood, Pactiv is arguing it has no opportunity to appeal the decision, and its liability is growing daily.  In other words, this case falls between the previous cases, because the government has ordered Pactiv to do something, has not yet taken an affirmative step toward collecting damages for failure to follow that order, but also does not permit the order's recipient

---

be based on the seriousness of the violation and any good faith efforts of the person to comply with the request of the department."  M.C.L. § 324.20137(1)(e).

to appeal while potential liability increases daily.


**B. Persuasive Precedent**

Defendants rely on a district court decision from the District of Columbia, <u>Gen. Elec. Co.</u> <u>v. Johnson</u>, for the proposition that Plaintiff does not assert an interest that implicates due process concerns here.   362 F. Supp.2d 327 (D.D.C. 2005).  In that case, the government ordered the plaintiff to perform a cleanup without first giving the plaintiff an opportunity to be heard, and the plaintiff alleged a violation of due process.  The court held the issuance of a unilateral order did not trigger a property deprivation, because the agency could only force compliance with the order by going to court.[5]  <u>Id.</u> at 339.  In reaching its decision, the D.C. district court attempted to distinguish <u>Hodel</u> by asserting that the "Supreme Court never actually considered in <u>Hodel</u> whether the order of the Secretary of the Interior halting mining operations amounted to a deprivation of property."  <u>Id.</u> at 340.  It also noted that unlike the order in <u>Hodel</u> to cease operations immediately, the order to clean up a site "will generally entail a drawn out undertaking, which may not even commence in concrete terms for months."  <u>Id.</u>

The only Circuit court precedent on this subject I have located that addresses Supreme Court precedent[6] comes from the Second Circuit, although it does not address <u>Hodel</u>.  In

---

[5]The court noted this conclusion did not contemplate the question of whether a pattern and practice challenge could go forward.  For instance, the court specifically did not decide whether a pattern and practice claim could go forward if the allegations were that in controlling the timing of review and the use of the penalty provisions, the agency was effectively removing the opportunity to challenge government orders in court.  <u>Gen. Elec.</u>, 362 F. Supp. 2d at 339, n.6.

[6]Without discussing <u>Hodel</u>, the Fourth Circuit found no due process violations in <u>S. Pines</u> <u>Assoc. v. United States</u>, in which a construction company had been ordered to take certain actions by an administrative agency without first having an opportunity to be heard.  912 F.2d

Asbestec Constr. Servs., Inc. v. Envtl. Prot. Agency, 849 F.2d 765, 770 (2d Cir. 1988), the government issued a compliance order to the plaintiff that required it to take a number of actions, but it had not yet brought an enforcement action. Arguing that the order would limit its competitiveness to take on work, as it would be forced to disclose the existence of the order in public bidding processes, the plaintiff alleged a due process violation. Id. at 769. The court disagreed, finding no actionable liberty interest, because the plaintiff had not lost government employment, as required by the Supreme Court in defamation-based cases. Id., citing Paul v. Davis, 424 U.S. 693, 706 (1976) and Board of Regents v. Roth, 408 U.S. 564 (1972). Citing regulations issued by the agency, the court also found no property interest, because the company was still able to seek government contracts. Id. at 770 ("If at some future time appellant was [listed as a company federal agencies may not contract with], it would be entitled under the regulations to procedural due process protections prior to the implementation of such a penalty").

## C. Application to the Case at Bar

The Sixth Circuit jurisprudence on this question, while setting forth some helpful parameters, does not definitively answer whether the issuance of such an order affects the kind of interest that is protected by the Due Process Clause. Other courts have answered that question

---

713, 717 (4th Cir. 1990). The court found no pre-enforcement hearing was needed because the company was not "subject to an injunction or penalties until EPA pursues an enforcement proceeding" at which they could make arguments as to the agency's jurisdiction to issue the order. Id. In doing so, the Fourth Circuit relied on the Seventh Circuit case of Hoffman Group, Inc. v. Envtl. Prot. Agency, which considered whether pre-enforcement review of an order was required by the terms of the Clean Water Act. 902 F.2d 567 (1990). The decision in Hoffman Group also did not mention Hodel and did not explicitly address due process, except to note that all constitutional challenges to the order could be brought in a judicial hearing before the plaintiff became "subject to an injunction or any penalties for not obeying the Compliance Order." Id. at 570 (7th Cir. 1990).

in the negative, but to do so a court must distinguish <u>Hodel</u>.  Although the D.C. district court

stated that the Supreme Court never actually considered whether a property interest was at stake,

my reading of <u>Hodel</u> indicates that the Court did consider the question and find such an interest.

452 U.S. at 299-300.  The D.C. Court's more convincing argument for distinguishing <u>Hodel</u>

deals with the immediacy of the order, implying that instructions to undertake actions that may

take months raise less need for immediate review than those that must be completed in a day.

362 F. Supp.2d at 340.  Unfortunately, the D.C. Court offered no precedential support for this

legal principle.  <u>Id.</u>  Moreover, although the Second Circuit's opinion in <u>Asbestec</u> points to other

Supreme Court precedents creating a high bar for liberty interests, it cited no Supreme Court

precedents to support its high bar for what qualifies as a property interest protected by the Due

Process Clause.

In this case, like <u>Hodel</u>, the government ordered Plaintiff to do something.  I do not find

the above cases to be convincing in their attempts to distinguish that precedent, and other cases

fail to address it.  In motions to dismiss, I must make all inferences to the benefit of the Plaintiff,

and I cannot say at this time it could prove no facts that would allow it to show an interest under

the <u>Hodel</u> standard.  Therefore, I take the next step in the due process analysis: the <u>Mathews v.</u>

<u>Eldridge</u> test.

## VI. <u>Mathews v. Eldridge</u> Factors

"[D]ue process does not require access to the courts before final administrative action.

Likewise, a statute, at least in a public health area, may prohibit pre-enforcement judicial

review."  <u>Lone Pine Steering Comm. v. Envtl. Prot. Agency</u>, 777 F.2d 882, 886 (3d Cir. 1985).

The balancing test applied to determine how much process is due in a specific set of

12

circumstances is "flexible and calls for such procedural protections as the particular situation demands."  Mathews v. Eldridge, 424 U.S. 319, 334 (1976), quoted by Wilson Air Ctr., LLC v. Fed. Aviation Admin., 372 F.3d 807, 817 (6th Cir. 2004).  In other words, whether Plaintiff is entitled to pre-enforcement review under that test depends on the result after weighing three factors: (1) the interest involved; (2) the risk of erroneous deprivation of such an interest through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the "function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

### A. Nature of the Interest

Generally speaking, interests that are pecuniary in nature are not weighted heavily in the balancing of claims.  E.g., English v. Blue Cross Blue Shield, 263 Mich. App. 449, 462 (2004), Cathedral Rock of N. Coll. Hill, Inc. v. Shalala, 223 F.3d 354, 364-65 (6th Cir. 2000), quoting Northlake Cmty Hosp. v. United States, 654 F.2d 1234, 1242 (7th Cir. 1981) ("a provider's financial need to be subsidized for the care of its Medicare patients is only incidental to the purpose and design of the [Medicare] program.").  Here, Plaintiff has been ordered to plan, and the failure to properly plan carries monetary penalties that are incidental to the main purpose of cleanup of waste sites.  Therefore, this factor adds little weight to Plaintiff's claim that pre-deprivation hearings are required.

### B. Risk of Erroneous Deprivation

Plaintiff lists several factors that it says contributes to a high risk of erroneous deprivation: (1) eight different people have the authority to issue a letter under M.C.L. § 324.20114(1)(h); (2) no predicate finding of endangerment is necessary; (3) the only way to get

review of an order is to refuse to obey it, and the government controls the timing of that review; (4) the "sufficient cause" defense bars the recipient from challenging the activity set forth in a demand; and (5) the statute shifts the burden to the recipient of the order.[7]  (Pl.'s Br. of Feb. 13, 2006.)

Plaintiff cites no precedent for the argument that the risk of erroneous deprivation is increased because multiple people can issue this type of letter, and I have found none. Therefore,  I agree with the government's argument that this is not relevant to the issue here.

The second factor implicates Hodel's "normal rule that due process requires a hearing prior to deprivation of a property right," with a recognized exception for emergency situations. 452 U.S. at 300.  Essentially, Plaintiff is saying that the risk of erroneous deprivation is higher when there is no finding of endangerment made by the agency.  The government alleges that the purpose of the Act as a whole is to expeditiously facilitate cleanup of hazardous waste sites which pose a danger to the environment, but does not otherwise describe its own processes before issuing a letter under  M.C.L. § 324.20114(1)(h).  (Def.'s Br. of Feb. 13, 2006, 10.) Additionally, for support for the second and fourth allegations, Plaintiff cites Tenn. Valley Auth. v. Whitman.  336 F.3d 1236 (11th Cir. 2003).  In that case, the court found a violation of the due process clause based on the fact that the order could be issued "on the basis of any information available" and because a court was never permitted to hear the question of whether the EPA had erred in issuing the order.  Id. at 1243.  This case is not directly on point, since here, the court would be empowered to determine whether the order was issued in error, and that hearing would take place before any penalties will be formally imposed.

_____

[7]See 419 F.Supp.2d at 966.

As to the third allegation, there is no question that when petitioners are entitled to an additional level of review, that weighs against imposing further due process burdens on the government.  Denko v. INS, 351 F.3d 717, 730 (6th Cir. 2003).  Additionally, when a party has many opportunities to attempt to settle with the agency, that lowers the risk of erroneous deprivation, even absent a hearing.  Sutton v. United States SBA, 92 Fed. Appx. 112, 122 (6th Cir. 2003) ("plaintiffs have had many chances to discuss the defaulted mortgage with the SBA and to attempt to arrive at a compromise.")  I note that Plaintiff and Defendants have been in settlement discussions for years on end in this matter.  419 F.Supp.2d at 960-61.

Comparatively, when there is an "effective[] denial of a prompt hearing," that is a factor that increases risk of erroneous deprivation.  Smith v. Williams-Ash, 173 Fed. Appx. 363, 366 (6th Cir. 2005).  Some delay in providing process, however, does not increase the risk of erroneous deprivation.  City of Los Angeles v. David, 538 U.S. 715, 718 (2003) ("A 30-day delay in presenting evidence is unlikely to spawn significant factual errors.  Administrative and judicial proceedings normally take place after considerably more time has elapsed.")  I note that the government has failed to bring an action against Pactiv to date, more than two years after Defendants concede they had notice of noncompliance.  Thus, the amount of the delay is far more than the Supreme Court found untroubling in David, and raises the question of whether the long delay is effectively a denial of a prompt hearing.[8]  I think this much delay does increase the risk of an erroneous deprivation, although the long duration of settlement talks reduces the weight I would otherwise place on this factor.

---

[8]I note the Seventh Circuit also expressed concern about the ability of agencies to "delay[] indefinitely" hearings.  Employers Ins. of Wausau v. Browner, 52 F.3d 656, 663 (7th Cir. 1995).

Finally, as to the fifth contention, the D.C. Circuit has expressed concern about potential due process violations, albeit in dicta, when the burden is shifted from the government to the subject of an order.  Chem. Waste Mgmt., Inc. v. Envtl. Prot. Agency, 56 F.3d 1434, 1438 (1995).  I see this factor as increasing the risk of an erroneous deprivation.

Overall, therefore, I think Plaintiff has alleged enough of an increased risk of erroneous deprivation to allow this case to go forward at this stage, since I can only dismiss if Plaintiff undoubtedly can prove no set of facts in support of its claims.  Ziegler, 249 F.3d at 512.

## C. Governmental Interest

The Sixth Circuit and the Supreme Court have approved of agencies fashioning their own appropriate procedures, because they are in a "better position than federal courts or Congress itself to design procedural rules adapted to the peculiarities of the industry and the tasks of the agency involved.'"  Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 525 (1978), quoted approvingly by Denko v. INS, 351 F.3d 717, 730 (6th Cir. 2003).  Therefore, courts should not to force the government to "over-invest procedurally in claims that might be assessed just as accurately without" requiring more procedural process.  Wilson Air Ctr., LLC v. Fed. Aviation Admin., 372 F.3d 807, 817 (6th Cir. 2004), citing Penobscot Air Servs. v. Fed. Aviation Admin., 164 F.3d 713 (1st Cir. 1999).

In similar situations, courts have found the government has a very strong interest in the prompt cleanup of hazardous waste sites.[9]  E.g., Broward Gardens Tenants Ass'n v. Envtl. Prot.

_____

[9]I note that despite the interest in speedy cleanup cited by Defendants, the Complaint alleges that the federal government signed its order mandating monitoring but no cleanup activities at the site in 1994.  (Am. Compl. at 33.)  A reasonable inference from this allegation is that the state government has had more than a decade to take action in line with its interest in speedy cleanup beyond that ordered by the federal government, and yet still has not brought

16

Agency, 311 F.3d 1066, 1076 (11th Cir. 2002).  Plaintiff, however, has had no discovery and therefore no opportunity to determine what additional administrative burdens and costs would be placed on the government if it were required to give an opportunity to be heard before issuing a letter making a demand under M.C.L. § 324.20114(1)(h).[10]  The government claims that Plaintiff has not detailed alternative processes, but the Complaint seeks "a full and fair hearing before an impartial tribunal at a meaningful time and in a meaningful manner."  (First Am. Compl. ¶ 61.)  I do not believe more is required at this stage.  Without discovery, Plaintiff cannot make further factual allegations regarding the burden such a regime might have on the government.  Simply put, it is too early at this stage to properly weigh this factor, since I cannot say that it is impossible for Plaintiff to prove a set of facts that would allow it to prevail, although I believe Plaintiff has a steep hill to climb.

At this time, I cannot say definitively that there is no set of facts that Plaintiff could prove that would allow me to find in its favor.  After discovery, this Court will be in a better position to weigh these factors for both the facial and the as applied claim.[11]  Therefore, I DENY the motion to dismiss the due process challenge at this time.

## VII.  Intimidation by Potential Penalty (**Ex parte Young**)

As discussed in Part IV, Ex parte Young and its progeny offer another potential test for

_____

court action against Pactiv or begun its own cleanup.

[10]Ripeness in this case depended on the fact that the letters at issue contained a written request under M.C.L. § 324.20114(1)(h).  914 F.Supp.2d 964-66.  Therefore, nothing I have or could say on this matter would restrict the government's ability to send a written letter detailing the necessary steps Plaintiff must take under the statute, as long as the letter notes it does not constitute an official request under M.C.L. § 324.20114(1)(h).

[11]Even a court that found no protected property interest allowed due process pattern and practice claims to go forward into discovery.  Gen. Elec., 362 F.Supp.2d at 339 n.6.

unconstitutionality.  A law is unconstitutional if the government pursues ruinous penalties while avoiding a judicial test by refusing to bring action to recover those penalties.  209 U.S. at 147. Before any substantive discussion of this line of cases begins, I must first contend with the Supreme Court's explicitly reservation of the question of whether a party may bring suit under the Declaratory Judgment Act alleging unconstitutionality of a statute under the Ex parte Young line of reasoning.  United States v. Morton Salt Co., 338 U.S. 632, 654 (1950).  The Court has similarly declined to state whether the general equitable powers of the courts could provide a remedy to this problem.  Id.

One possible answer to this question is to find that the Ex parte Young doctrine is a second due process test, and thus I can assume it is also being raised under § 1983 in this case. Several courts have considered Ex parte Young challenges as due process challenges in this manner, though they did not explicitly address the issue identified and avoided by the Supreme Court regarding the kind of claims that are acceptable.  Wagner Seed Co. v. Daggett & Envtl. Prot. Agency, 800 F.3d 310, 315-16 (2d Cir. 1986); Solid State Circuits, Inc. v. Envtl. Prot. Agency, 812 F.2d 383, 390 (8th Cir. 1987); Gen. Elec., 362 F.Supp.2d at 342.  The Sixth Circuit did consider an Ex parte Young constitutional challenge under the Declaratory Judgment Act and allowed it to go forward, although it did so before the Supreme Court raised the question of whether such actions were permitted.  Interstate Transit, Inc. v. City of Detroit, 46 F.2d 42, 43 (6th Cir. 1931).  Based on this precedent, I believe that the due process elements of Ex parte Young allow this issue to be raised under the Declaratory Judgment Act in conjunction with § 1983 as one type of due process claim.  Therefore, I do not have to answer the question of whether the Ex parte Young challenge can be raised directly under the Declaratory Judgment

Act.[12]

The Supreme Court teaches that when the subject of an order has the opportunity to appear before a court and challenge that order, and faces no penalties for his disobedience provided he can successfully establish a defense of a good faith, such a regime avoids the problem described in Ex parte Young and its progeny.  Okla. Operating Co. v. Love, 252 U.S. 331, 338 (1920); Reisman et al. v. Caplin et al., 375 U.S. 440, 446 (1963); Thunder Basin Coal Co. v. Reich et al., 510 U.S. 200, 218 (1994) (no Ex parte Young problem where a "penalty assessment[] becomes final and payable only after full review by ... the appropriate court").  Defendants argue that since there is opportunity to make such a defense in court before the penalties would be final and payable under this statute, there can be no Ex parte Young problem.

The difficulty with that argument is that in each of those cases before the Supreme Court, the factual context regarding access to a hearing differed from that in this case.  In Okla. Operating Co., the order did not issue until "after a full hearing had been given" by the agency.  235 U.S. at 660.  In Reisman, the order disobeyed was a summons to a hearing, at which the

_____

[12]Although I have jurisdiction over the Ex parte Young constitutional challenge due to the Complaint's due process action under § 1983, the Ex parte Young line of cases rely on other portions of the Constitution as well, including the clauses forbidding ex post facto laws and providing a right to petition the courts.  Wadley S.R. Co. v. Georgia, 235 U.S. 651, 662 (1915) (unconstitutionality partly based on the idea that such statutes are akin to ex post facto laws because they punish for an act done when the legality of the command has not been authoritatively determined); Aminoil, Inc. v. United States, 646 F. Supp. 294, 298 (C.D. Cal. 1986) (recognizing First Amendment right to petition is implicated by Ex parte Young constitutionality challenges); see also Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 335 (1985) (when thrust of claim is denial of meaningful access to the courts, "First Amendment arguments, at base, are really inseparable from [] due process claims").

recipient of the order would be given an opportunity to intervene.  375 U.S. at 446, 449.  In

Thunder Basin, the recipient of the order could request expedited proceedings.  510 U.S. at 218.

Although other courts have relied on the statements in these decisions, none has engaged these

precedents enough to explain what provision for timely access to a court is required by Ex parte

Young.  E.g., Wagner Seed Co., 800 F.2d at 314-15; Solid State Circuits, 812 F.2d 383.  Since

the heart of the Ex parte Young doctrine is access to the courts, I find engaging on this issue is

critical in interpreting this doctrine.

 Here, Plaintiff has had no hearing and there is immediate prospect of one.  There is no

step that Plaintiff can take to get a hearing.  Pactiv will only get a hearing if and when the

government decides to bring an court action and the potential liability is growing daily.  Unlike

in the Supreme Court cases discussed above, Plaintiff alleges that prompt review is not available,

and that court intervention is needed in order for them to get an opportunity to be heard.  See

Life & Casualty Ins. Co. v. McCray, 291 U.S. 566, 574-75 (1934).

 There is another reason Plaintiff might not be able to state a claim using the Ex parte

Young rubric, however: the severity of the potential penalties.  Penalties are considered

unconstitutionally high when they intimidate the recipient of an order from resorting to the

courts to test the order's validity, but constitutional when they are "the fair price of the

adventure."  291 U.S. at 575, citing St. Louis, I. M. & S. Ry. Co. v. Williams, 251 U.S. 63, 66

(1919) (penalties are illegal when "wholly disproportioned to the offense and obviously

unreasonable.")  Plaintiff has said that the cost of performing the required planning analyses

would be approximately $1,200,000.  (Pl.'s Br. of Feb. 13, 2006, Exh. I, Affidavit of Kenneth G.

Wiley, ¶4.)  The maximum penalty for failure to do that planning is $1,096,000, although the

current amount the government would be able to seek right now is noticeably less than that.[13]

At this point, I am not prepared to say that there is no way that Plaintiff can show the penalty above meets the Ex parte Young standard – in other words, I will not say that the proposed penalty is unquestionably not ruinous.  209 U.S. 123 (cited for this proposition by Solid State Circuits, 812 F.2d at 385, and Union Elec. Co. v. Envtl. Prot. Agency, 593 F.2d 299, 305 (8th Cir. 1979)).  It is well established that "the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary."  Hodel, 452 U.S. at 294-295, citing Socialist Labor Party v. Gilligan, 406 U.S. 583, 588 (1972), Rescue Army v. Mun. Court, 331 U.S. 549, 568-575, 584 (1947), and Ala. State Fed'n of Labor v. McAdory, 325 U.S. 450, 461 (1945).  Plaintiff urges this Court that it needs discovery to challenge this motion, and I think Defendants will benefit from greater factual development as well.  See Pl.'s Br. of Feb. 13, 2006, 19.  I note this is true for an Ex parte Young pattern and practice claim as well as the as applied claim.

---

[13]In my Opinion and Order of Jan. 30, 2006, I noted it was not clear whether the $1,000 per day fine provided for in M.C.L. § 324.20137(1)(e) was an exclusive penalty or whether the $10,000 per day fine of M.C.L. § 324.20137(1)(f) applied as an additional penalty.  See 419 F. Supp. 2d at 959 n.3.  Defendants have now clarified that the penalty for failing to satisfy a demand in a letter issued under M.C.L. § 324.20114(h)(1) is the $1,000 per day fine.  (Apr. 13, 2006 Tr. 10-11.)  The $10,000 per day fine can be imposed for failure to follow other sections of the Act, some of which may impose similar requirements, but cannot be imposed as an additional fine solely for the failure to obey a § 324.20114(h)(1) demand letter.  Id.  As discussed in my Jan. 30, 2006 Opinion and Order, the agency has only taken final action under M.C.L. § 324.20114(h)(1), and not under other provisions of the Act.  419 F.Supp.2d at 964-66.  Moreover, only the orders to conduct planning activities and analyses are ripe.  I do not have jurisdiction to hear challenges to the potential penalties for failure to follow any other portion of the statute or to undertake any direct cleanup activities.  Id.  Therefore, this Opinion and Order assumes a fine of $1,000 per day, or a total maximum of $1,096,000 ((365+365+366) x $1,000).  As discussed earlier, the government concedes it has not yet reached the maximum time period.

21

**CONCLUSION**

The general rule that greater factual development is often required before a motion for summary judgment can be granted applies here.  Using the standard for a motion brought under Fed. R. Civ. P. 12(b), for the reasons stated above, Defendants' motion must be DENIED at this time.  Additionally, all parties shall attend a status conference in this case on October 18, 2006 at 10 a.m.  **IT IS SO ORDERED.**

Date:  September 21, 2006                              s/John Feikens
                                                      United States District Judge

---

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on Sept. 21, 2006, by U.S. first class mail or electronic means.

                              s/Carol Cohron
                              Case Manager

---

22