# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PACTIV CORPORATION, a Delaware corporation,

       Plaintiff,

vs.

                                                           Case No. 05-71116
                                                           Hon. John Feikens

STEVEN E. CHESTER, Director of the Michigan
Department of Environmental Quality,
and
MICHAEL COX, Attorney General for the State of
Michigan,

       Defendants.

_____/

Jay E. Brant (P11134)
Joseph M. Polito (P25313)
Jeffrey L. Woolstrum (P45421)
HONIGMAN MILLER SCHWARTZ AND
COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000

Kathleen L. Cavanaugh (P38006)
Celeste R. Gill (P52484)
Assistant Attorneys General
MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
525 W. Ottawa Street
G. Mennen Williams Building
6th Floor
Lansing, MI 48933
(517) 373-7540
Attorneys for Defendants

1

Attorneys for Pactiv Corporation

_____
                                    /
_____


**CONSENT DECREE**

This Consent Decree sets forth an agreement between Plaintiff Pactiv Corporation (Pactiv) and Defendants Steven E. Chester, Director of the Michigan Department of Environmental Quality ("MDEQ"), and Michael Cox, Attorney General for the State of Michigan regarding this case.

Pactiv and Defendants agree not to contest: (a) the authority or jurisdiction of this Court to enter this Consent Decree; or (b) any terms or conditions set forth herein.

The entry of this Consent Decree is not an admission or denial: (a) by either Party of liability with respect to any issue dealt with in this Consent Decree or of any factual allegations or legal conclusions stated or implied herein; (b) by Defendants of any factual allegations or legal conclusions stated or implied in Pactiv's First Amended Complaint ("Complaint"); or (c) by Pactiv of any factual allegations or legal conclusions stated or implied in Defendants' Answer and Affirmative Defenses.  Entry of this Consent Decree is not a waiver or release of rights, defenses, authorities or remedies except as expressly provided in this Consent Decree.

NOW, THEREFORE, before the taking of any testimony, and upon the consent of the Parties, by their undersigned attorneys, it is hereby ORDERED, ADJUDGED AND DECREED:

## I.  JURISDICTION

1.1     For purposes of this Consent Decree and all matters arising under it, the Parties stipulate to the jurisdiction of, and venue in, this Court.  In so stipulating, Defendants do not waive, and expressly reserve the right to raise, any jurisdictional defenses, including, but not limited to, standing, ripeness, or mootness in any other action brought by Pactiv.

## II.  PARTIES BOUND

2.1     This Consent Decree shall apply to and be binding upon Pactiv, Defendants and their respective successors and assigns.

2.2     The signatories to this Consent Decree certify that they are authorized to execute this Consent Decree and to legally bind the Parties they represent.

## III.  DEFINITIONS

3.1     "1991 Remedial Investigation" means the remedial investigation/feasibility study prepared by Pactiv pursuant to the May 14, 1985 Administrative Order by Consent between Pactiv and EPA concerning the PCA Site, and submitted by Pactiv to EPA in April, 1991.

3.2     "2002 Notice of Demand" means the January 10, 2002 letter from Andrew W. Hogarth of the MDEQ Environmental Response Division and A. Michael Leffler of the Michigan Department of Attorney General to Richard Wambold of Pactiv.

3.3     "2003 Notice of Demand" means the December 19, 2003 letter from Barb Schaibly of the MDEQ Remediation and Redevelopment Division to Richard Wambold of Pactiv.

3.4    "Defendants" means collectively Steven E. Chester, in his official capacity as Director of MDEQ, and Michael Cox, in his official capacity as Attorney General for the State of Michigan.

3.5    "Demand Notices" means the 2002 Notice of Demand and the 2003 Notice of Demand.

3.6    "Effective Date" means the date this Consent Decree is entered by this Court.

3.7    "EPA" means the United States Environmental Protection Agency and its successor agencies.

3.8    "Exacerbation" means a change in facility conditions that increases Response Activity Costs caused by any additional investigation conducted under Section 6.1 of this Consent Decree, with respect to existing contamination at the PCA Site.

3.9    "June 1992 Feasibility Study" means the final feasibility study for the groundwater operable unit at the PCA Site submitted by Pactiv to EPA in June, 1992.

3.10    "MDEQ" means the Michigan Department of Environmental Quality, any successor agencies and those authorized persons or entities acting on their behalf, including Defendants.

3.11    "NREPA" means the Natural Resources and Environmental Protection Act, M.C.L. § 324.101 *et seq*.

3.12    "Parties" means Pactiv and Defendants.

3.13    "PCA Site" means the Packaging Corporation of America Superfund Site as defined by EPA at 48 Fed. Reg. 40,658 (Sept. 8, 1983).

3.14    "ROD" means the September 24, 1993 Record of Decision rendered by EPA for the PCA Site under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*.

3.15    "Response Activity" means evaluation, investigation, interim response activity, removal action, remedial action, demolition, or the taking of other actions necessary to protect the public health, safety, or welfare, or the environment or the natural resources.  Response Activity also includes health assessments or health effect studies carried out under the supervision, or with the approval of, the department of public health and enforcement actions related to any Response Activity.  The term "Response Activity" includes, but is not limited to, all activities included within the term "response" as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), and the term "response activity" as defined in Section 20101(1)(ee) of NREPA, M.C.L. § 324.20101(1)(ee).

3.16    "Response Activity Costs" means all costs incurred in taking or conducting a Response Activity, including enforcement costs and attorneys' fees relating thereto.  "Response Activity Costs" includes, but is not limited to, all costs included within the term "response activity costs" as defined in Section 20101(1)(ff) of NREPA, M.C.L. § 324.20101(1)(ff).

3.17    "Scope of Work" means the document prepared by MDEQ that sets forth the scope and content of the additional investigation of the PCA Site that MDEQ may undertake pursuant to Article VI of this Consent Decree.

3.18    "Withdrawal Letter" means the October 13, 2006 letter from Andrew W. Hogarth of the MDEQ Environmental Response Division to Richard Wambold of Pactiv.

4

### IV.  PACTIV'S WAIVER OF ATTORNEYS' FEES

4.1     Pactiv forever waives, releases, and covenants not to sue Defendants for and with respect to any claim for attorneys' fees in connection with this matter incurred through the expiration of Defendants' Covenant Not To Sue under Section 7.1 of this Consent Decree.

### V.  DEFENDANTS' WAIVER OF PAST COSTS, CIVIL FINES AND PENALTIES

5.1     Defendants, on behalf of MDEQ and the State of Michigan, forever waive, release, and covenant not to sue Pactiv for and with respect to: (a) any claim arising under federal, state or common law for Response Activity Costs relating to the PCA Site incurred through the Effective Date, and any applicable interest thereon; and (b) any claim for fines or penalties for violations of the NREPA relating to the matters alleged in the Demand Notices or the Withdrawal Letter, which violations occurred prior to the expiration of Defendants' Covenant Not To Sue under Section 7.1 of this Consent Decree.

### VI.  ADDITIONAL INVESTIGATION OF THE PCA SITE

6.1     Defendant, Steven E. Chester, may cause MDEQ to fund and undertake an additional investigation of the PCA Site for the purpose of gathering additional data to support MDEQ's position that the assumptions and conclusions in the ROD (or the assumptions and conclusions in the 1991 Remedial Investigation and the June 1992 Feasibility Study that formed the basis for the conclusions in the ROD) are not supported, i.e., that the final decision selected by EPA for the PCA Site is not protective of human health and the environment.

6.2     Defendant, Steven E. Chester, shall cause MDEQ to provide Pactiv with thirty (30) days written notice prior to commencing any additional investigation under Section 6.1 of

this Consent Decree.   Such notice shall include the Scope of Work for the additional investigation and a projected schedule for its completion.

6.3    In the event that access to Pactiv's property is necessary to undertake any additional investigation, the Parties will attempt to reach agreement on a mutually acceptable access agreement.   Such access shall be in accordance with and subject to Section 20117 of NREPA, M.C.L. § 324.20117.  Defendants reserve all their rights under law for obtaining access to Pactiv's property and Pactiv reserves all its rights to defend against and contest any such action.

6.4    Upon completion of any additional investigation under Section 6.1 of this Consent Decree, Defendants shall provide Pactiv with a report summarizing the results of the additional investigation.

6.5    In no event shall Pactiv be liable for any Exacerbation as defined in Section 3.8 of this Consent Decree.  The burden of proof in a dispute as to what constitutes Exacerbation shall be borne by the Party seeking relief.

## VII.  DEFENDANTS' COVENANT NOT TO SUE

7.1     Except as may be necessary to secure access to Pactiv's property, Defendants hereby covenant not to sue, or to take, or cause the taking of, any legal action, including any judicial or administrative action, against Pactiv under any federal, state or common law concerning Response Activities, Response Activity Costs, or fines or penalties under the NREPA concerning the PCA Site until thirty (30) days after MDEQ has collected additional data during any additional investigation conducted under Section 6.1 of this Consent Decree indicating that the conclusions and assumptions in the ROD (or the assumptions and conclusions in the 1991 Remedial Investigation and the June 1992 Feasibility Study that formed the basis for the conclusions in the ROD) are not supported, i.e., that the final decision selected by EPA for the PCA Site is not protective of human health and the environment, and MDEQ has provided Pactiv with a report pursuant to Section 6.4 of this Consent Decree summarizing that data.

## VIII.  DISPOSITION OF PACTIV'S CLAIMS

8.1     Pactiv's claims raised in the Complaint are dismissed without prejudice and Pactiv agrees not to reassert such claims against Defendants until Defendants assert demands against Pactiv or take an enforcement action against Pactiv for Response Activities or Response Activity Costs relating to the PCA Site, or fines or penalties under NREPA relating to the matters alleged in the Demand Notices or the Withdrawal Letter; provided, however, that the reassertion of any such claims by Pactiv shall be subject to Article XI of this Consent Decree.

## IX.  RESERVATIONS

7

9.1     Except as expressly waived, released, covenanted against or as otherwise provided in this Consent Decree, the Parties reserve all rights, claims, and defenses in connection with this matter.

## X.  NOTICES

10.1    Notices required to be given or reports required to be forwarded by one Party to the other Party under this Consent Decree and other communications between the Parties concerning the PCA Site shall be directed to the Parties' respective undersigned attorneys.

## XI.  CONTINUING JURISDICTION

11.1    This Court shall retain jurisdiction over the Parties and subject matter of this action to implement, construe or enforce this Consent Decree and to resolve disputes arising under this Consent Decree.

11.2    The Parties agree that any subsequent action filed by either Party concerning Response Activities or Response Activity Costs relating to the PCA Site, or fines or penalties under the NREPA relating to the matters alleged in the Demand Notices or the Withdrawal Letter shall be filed in this Court.

**s/John Feikens**
John Feikens
United States District Judge

Dated:  February 13, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 13, 2007.

s/Carol Cohron
Deputy Clerk


FOR PLAINTIFF PACTIV CORPORATION,
a Delaware corporation:


 /s Joseph M. Polito                              Date:  February 13, 2007
Joseph M. Polito (P25313)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
Attorney for Pactiv Corporation


FOR DEFENDANT STEVEN E. CHESTER,
Director of the Michigan Department of Environmental Quality;
AND DEFENDANT MICHAEL COX
Attorney General for the State of Michigan:


 /s with consent of Kathleen L. Cavanaugh          Date:  February 13, 2007
Kathleen L. Cavanaugh (P38006)
Assistant Attorneys General
MICHIGAN DEPARTMENT OF ATTORNEY GENERAL
525 W. Ottawa Street
G. Mennen Williams Building
6th Floor
Lansing, MI 48933
(517) 373-7540
Attorney for Defendants